UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES MCCRARY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-880** |
| **JOHN W. STONE OIL DISTRIBUTOR, L.L.C.** | **SECTION "I"(2)** |

**ORDER AND REASONS**

Before the Court is a motion[1] filed by defendant, John W. Stone Oil Distributor, L.L.C. ("Stone Oil"), seeking "to Exclude the Testimony and Report of Captain James Jamison, plaintiff's maritime expert."[2] Plaintiff opposes the motion.[3] For the following reasons, the motion is **DENIED**.

**I. BACKGROUND**

Plaintiff contends that he is a Jones Act seaman injured while working on the M/V JENNIFER which was owned and operated by Stone Oil.[4] "McCrary's injury occurred when he was crossing either up or down two barges by climbing the tires mounted to the side of the barge."[5] Plaintiff alleges he experienced "serious painful injuries to his right hip and other parts of his body."[6]

Plaintiff intends to call Captain James P. "Pat" Jamison ("Jamison") as a "marine safety expert to provide expert testimony concerning all issues of negligence, liability, dangerous acts, actions below the standard of care in the industry and all issues of negligence or liability on the part of the defendants as well as any alleged comparative fault on the part of plaintiff."[7] According

---

[1] Rec. Doc. 40
[2] Rec. Doc. 40-1 at 1.
[3] Rec. Doc. 41.
[4] *See* Rec. Doc. 1.
[5] *See* Rec. Docs. 17-2 at 2 & 22-2 at 2.
[6] *See* Rec. Doc. 1.
[7] *See* Rec. Doc. 38 at 3.

to Jamison's Rule 26 expert report, he reviewed nineteen documents or groups of documents, including discovery responses, depositions, reports, logs, photographs, and a policy manual.[8] On the basis of his review of those materials, Jamison formed seven "conclusions and opinions as to the reasons Mr. James McCrary was placed in an unsafe work workplace on or about March 1, 2014 to March 4, 2014."[9]

Stone Oil takes issue with such conclusions and seeks to exclude Jamison's testimony, arguing that his "opinions and conclusions are admittedly based on assumptions of fact that are not supported by any evidence or testimony and thus unreliable."[10] Stone Oil's specific criticisms are scattershot and run the gamut from whether Jamison properly relied on plaintiff's deposition testimony that he was "rushed" at the time of his alleged injury,[11] to whether Jamison was correct to conclude that no job safety meeting occurred when the record is silent as to that circumstance.[12]

## II. LAW AND ANALYSIS

### A. Daubert and Rule 702

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

---

[8] R. Doc. No. 40-2, at 9.
[9] R. Doc. No. 40-2, at 10.
[10] *See* Rec. Doc. 40-1.
[11] R. Doc. No. 40-1, at 13-17.
[12] R. Doc. No. 40-1, at 17-18.

2

>(d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert*, 509 U.S. at 596, 113 S.Ct. 2786.

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 584 (5th Cir.2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards

3

controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed.Appx. 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n. 5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

**B. Analysis**

Stone Oil does not argue that Jamison does not qualify as an expert, but it instead contends that Jamison's opinions should not be admissible because they lack a sufficient factual basis. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).

4

Furthermore, experts may rely on one version of disputed facts in forming their opinions. *Moore v. Int'l Paint, L.L.C.*, 547 F.App'x 513, 515 (5th Cir. 2013) (quoting *Paz v. Brush Engingeered Materials, Inc.*, 482 F.3d 383, 389 (5th Cir. 2009)). It is "the role of the adversarial system, not the court, to highlight weak evidence." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004). Courts break from this general rule in exceptional circumstances, such as when an expert's testimony relies on "completely unsubstantiated factual assertions." *See Hathaway v. Bazany*, 507 F.3d 312, 319 n.4 (5th Cir. 2007).

At this time and without the benefit of the factual record to be developed at trial, the Court cannot conclude that all of Jamison's anticipated opinion testimony is based on completely unsubstantiated factual assertions. Some of his factual assumptions, such as how plaintiff moved between barges or whether he was "rushed," appear to be reasonably supported by the record, even if those assumed facts are disputed or can be characterized differently by the parties. *See Moore*, 547 F. App'x at 515.

Other bases for Jamison's opinions, such as the probable condition of the river at the location in question, appear to have some rational connection to his experience and personal knowledge and do not appear to be contradicted by evidence in the record. To the extent that other factual assumptions partially underlying Jamison's opinions are less obviously supported by facts in the record, such circumstance appears at this time to go to the weight of his testimony and not its admissibility. The total factual basis for Jamison's opinions will be an appropriate basis for cross-examination at trial and, if appropriate, a renewed motion to exclude or restrict his opinions.

Accordingly,

5

**IT IS ORDERED** that the "Motion In Limine to Exclude the Testimony and Report of Captain James P. Jamison" is **DENIED**.

New Orleans, Louisiana, this 26th day of February, 2016.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**